Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADAM GOTTFRIED,<br><br>  Plaintiff,<br><br>  v.<br><br>READY CAPITAL CORPORATION, THOMAS EDWARD CAPASSE, JACK JAY ROSS, FRANK P. FILIPPS, DOMINIQUE MIELLE, GILBERT NATHAN, ANDREA PETRO, J. MITCHELL REESE, and TODD M. SINAI,<br><br>  Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Adam Gottfried ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Ready Capital Corporation ("Ready Capital" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Ready Capital and a series of privately held, real estate structured finance opportunities funds managed by MREC Management, LLC (the "Mosaic Manager").

2. On January 10, 2022, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

3. The Registration Statement, which recommends that Ready Capital shareholders vote in favor of, among other things, the issuance of Ready Capital common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) the financial analyses performed by Ready Capital's financial advisor, Wells Fargo Securities, LLC ("Wells Fargo"), in connection with its fairness opinion; (ii) potential conflicts of interest involving Wells Fargo; and (iii) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company is headquartered in New York City.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

9. Plaintiff is, and has been at all relevant times hereto, an owner of Ready Capital common stock.

10. Defendant Ready Capital, together with its subsidiaries, operates as a real estate finance company in the United States. The Company is incorporated in Maryland. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "RC."

11. Defendant Thomas Edward Capasse ("Capasse") is Chief Executive Officer and Chairman of the Board of the Company.

12. Defendant Jack Jay Ross ("Ross") is President and a director of the Company.

13. Defendant Frank P. Filipps ("Filipps") is a director of the Company.

14. Defendant Dominique Mielle ("Mielle") is a director of the Company.

15. Defendant Gilbert Nathan ("Nathan") is a director of the Company.

3

16. Defendant Andrea Petro ("Petro") is a director of the Company.

17. Defendant J. Mitchell Reese ("Reese") is a director of the Company.

18. Defendant Todd M. Sinai ("Sinai") is a director of the Company.

19. Defendants Capasse, Ross, Filipps, Mielle, Nathan, Petro, Reese, and Sinai are collectively referred to herein as the "Individual Defendants."

20. Defendants Ready Capital and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21. On November 4, 2021, Ready Capital announced that it had entered into a definitive merger agreement pursuant to which Ready Capital agreed to acquire a series of privately held, real estate structured finance opportunities funds managed by the Mosaic Manager. The press release announcing the Proposed Transaction states, in pertinent part:

**Ready Capital Announces Merger Transaction**

- Transaction will create a scaled commercial mortgage REIT with a combined capital base in excess of $1.7 billion poised for long-term growth –

- Acquisition of market leading commercial real estate investment platform focused on construction lending and investing in workforce housing –

- Expands Ready Capital's existing SBC lending platform to provide capital solutions across the full lifecycle of commercial real estate investing –

- Expected value of deal at closing is approximately $471 million based on Ready Capital's last sale price on November 3, 2021 and could surpass $550 million with earn-out provisions -

NEWS PROVIDED BY
**Ready Capital Corporation**
Nov 04, 2021, 07:00 ET

NEW YORK, Nov. 4, 2021 /PRNewswire/ -- Ready Capital Corporation (NYSE:RC) ("Ready Capital"), a multi-strategy real estate finance company that originates, acquires, finances and services small- to medium-sized balance commercial loans, announced today that it has entered into a definitive merger agreement pursuant to which Ready Capital has agreed to acquire a series of privately held, real estate structured finance opportunities funds, with a focus on construction lending, managed by MREC Management, LLC (the "Mosaic Manager"). Following the mergers, Ready Capital is expected to have a pro forma equity capital base in excess of $1.7 billion. The acquisition is expected to further expand Ready Capital's investment portfolio to include a diverse portfolio of construction assets with attractive portfolio yields resulting in expected earnings accretion and a reduced leverage profile.

Under the terms of the merger agreement, Ready Capital will acquire all of the outstanding equity interests in Mosaic Real Estate Credit, LLC ("MREC Onshore"), Mosaic Real Estate Credit TE, LLC ("MREC TE") and MREC International Incentive Split, LP ("MREC IIS" and together with MREC Onshore and MREC TE, the "Mosaic Merger Entities") in exchange for (i) shares of a newly designated Ready Capital Class B common stock ("Class B Common Stock"), plus (ii) non-transferable contingent equity rights ("CERs") that, depending on the performance of the Mosaic asset portfolio over a three-year period following the closing, may entitle investors in the Mosaic Funds (as defined below) to receive additional shares of Ready Capital common stock. MREC IIS is an intermediate holding company through which investors in Mosaic Real Estate Credit Offshore, LP ("MREC Offshore" and together with MREC Onshore and MREC TE, the "Mosaic Funds") invest in the Mosaic platform. The shares of Class B Common Stock will have dividend, distribution and other rights identical to those of the existing shares of common stock of Ready Capital, except that the newly issued Class B Common Stock will not be listed on the New York Stock Exchange. The shares of Class B Common Stock will automatically convert (on a share-for-share basis) into shares of the existing class of common stock listed on the New York Stock Exchange on the first business day following the 365th day following the closing.

The number of shares of Class B Common Stock to be received by investors in the Mosaic Funds will be based on an exchange ratio determined by dividing the adjusted book value of the Mosaic Funds as of September 30, 2021, by the Ready Capital adjusted book value per share as of that date. The adjusted book values of Ready Capital and the Mosaic Funds will be modified in certain respects, including to give pro-forma effect to any dividends or other distributions. A $98.9 million reduction will be applied to the book value of the Mosaic Funds to derive their aggregate adjusted book value. Under a pro forma exchange ratio, as of June 30, 2021, investors in the Mosaic Funds would receive approximately 30.3 million shares of Class B Common Stock. Based on Ready Capital's closing stock price on November 3, 2021, the implied value of the Ready Capital shares expected to be issued in connection with the closing is approximately $471 million and the maximum possible payment under the CERs would be an additional

5

approximately $89 million of Ready Capital common stock (or 90% of the upfront $98.9 million reduction). Additionally, holders of CERs will have the right to receive dividends ("CER Dividends"), which will accrue based on the actual Ready Capital common dividends per share paid to shareholders from the closing of the transaction to the end of the three year term and will be paid to CER Holders to the extent the CER is realized at the end of the three- year term. The CER Dividend will also be delivered in the form of Ready Capital shares.

Upon the closing of the mergers, Ready Capital stockholders are expected to own approximately 70% of the combined company's stock, while holders of interests in the Mosaic Funds are expected to own approximately 30% of the combined company's stock.

Based on the closing prices of Ready Capital's common stock on November 3, 2021, the market capitalization of the combined company would be approximately $1.6 billion. The combined company will continue to operate under the name Ready Capital and its shares are expected to continue trading on the New York Stock Exchange under the existing ticker symbol "RC" and Waterfall Asset Management, LLC will continue to manage the combined company.

*   *   *

**Management, Governance and Corporate Headquarters**

Upon completion of the mergers, Ready Capital's Chairman and Chief Executive Officer Thomas Capasse will continue to lead the company and Ready Capital executives Jack Ross, Thomas Buttacavoli, Andrew Ahlborn, Gary Taylor and Adam Zausmer will remain in their current roles. The combined company will remain headquartered in New York, New York. The Board of the combined company is expected to have nine directors, consisting of Ready Capital's existing eight directors and one independent director appointed by the Mosaic Manager. Mosaic Manager will not be part of the merger and will remain as an independent company post-merger of one or more of the Mosaic Merger Entities. Mosaic Manager will be led by Ethan Penner and will continue to provide investment management services to certain existing and prospective clients as well as provide certain advisory services to Ready Capital in respect to real estate assets currently owned by the Mosaic Merger Entities.

**Timing and Approvals**

The transaction has been unanimously approved by the Board of Directors of Ready Capital. The transaction is expected to close during the first quarter of 2022, subject to the respective approvals by the stockholders of Ready Capital and the holders of interests in the Mosaic Funds and other customary closing conditions. The merger of each of the Mosaic Merger Entities with a subsidiary of Ready Capital is subject to the approval of investors of each of the

6

Mosaic Funds, each Mosaic Fund voting to approve the merger separately and independently of the other Mosaic Funds, *provided,* however, under the merger agreement, Ready Capital's obligation to acquire MREC TE and MREC IIS is conditioned upon the investors of MREC Onshore approving its merger.

**Advisors**

Wells Fargo Securities, LLC is acting as exclusive financial advisor and Alston & Bird LLP is acting as legal advisor to Ready Capital.  Wedbush Securities Inc. is acting as exclusive financial advisor and Sheppard, Mullin, Richter & Hampton LLP is acting as legal advisor to the Mosaic Funds.

\*   \*   \*

*About Mosaic*

Mosaic Real Estate Investors, ("Mosaic") was co-founded in 2015 by Ethan Penner as an opportunistic real estate structured finance firm focused on real estate debt and debt-like investments.  Mosaic created MREC Manager, an SEC registered investment adviser, to serve as the investment adviser to certain private funds and managed accounts, including the Mosaic Funds.

**About Ready Capital Corporation**

Ready Capital Corporation (NYSE: RC) is a multi-strategy real estate finance company that originates, acquires, finances and services small- to medium-sized balance commercial loans.  Ready Capital specializes in loans backed by commercial real estate, including agency multifamily, investor and bridge as well as SBA 7(a) business loans.  Headquartered in New York, New York, Ready Capital employs over 400 lending professionals nationwide.  The company is externally managed and advised by Waterfall Asset Management, LLC.

B. **The Registration Statement Contains Materially False and Misleading Statements and Omissions**

22. The Registration Statement omits and/or misrepresents material information concerning: (i) the financial analyses performed by Ready Capital's financial advisor, Wells Fargo, in connection with its fairness opinion; (ii) potential conflicts of interest involving Wells Fargo; and (iii) potential conflicts of interest involving Company insiders.

23. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation

of the Ready Capital Board and Its Reasons for the Transactions; and (ii) Opinion of Ready Capital's Financial Advisor.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Wells Fargo's Analyses

25. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Wells Fargo.

26. The Registration Statement fails to disclose the following concerning Wells Fargo's "*Selected Public Companies Analysis*": (1) the individual multiples and financial metrics of each company Wells Fargo observed in its analysis; (2) the aggregate and per share tangible book values of each company; and (3) the aggregate and per share dividend yields of each company.

27. The Registration Statement fails to disclose the following concerning Wells Fargo's "*Selected Precedent Transactions Analysis*": (1) the closing date of each transaction; and (2) the value of each transaction.

28. The Registration Statement fails to disclose the following concerning Wells Fargo's "*Dividend Discount Analysis*": (1) the projected distributions to equity holders of the Mosaic Merger Entities for fiscal year 2022 through the fiscal year 2025; (2) the projected terminal values of Ready Capital and the Mosaic Merger Entities; (3) the individual inputs and assumptions underlying the (i) range of terminal forward multiples of 0.90x to 1.10x, and of 0.95x to 1.15x, and (ii) discounts rates ranging from 10.75% to 13.25%, and from 10.50% to 12.50%; and (4) the individual analyst price targets for the common stock of Ready Capital observed by Wells Fargo

in its analysis, and the sources thereof.

29. The valuation methods, underlying assumptions, and key inputs used by Wells Fargo in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Wells Fargo's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

30. Without the information described above, the Company's shareholders are unable to fully understand Wells Fargo's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Potential Conflicts of Interest Involving Wells Fargo**

31. The Registration Statement omits material information concerning potential conflicts of interest involving Wells Fargo.

32. The Registration Statement fails to disclose the timing and nature of the past services Wells Fargo and/or its affiliates provided the Mosaic Manager and/or its affiliates, including the amount of compensation Wells Fargo received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

33. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

34. The omission of the above-referenced information renders the Registration

9

Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

35. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

36. The Registration Statement provides the following concerning the interests of the Board and the Company's officers in the Proposed Transaction:

**Interests of Ready Capital's Directors and Executive Officers in the Transactions**

\* \* \*

Following the consummation of the Transactions, all eight of the current directors of the Ready Capital Board are expected to continue as directors of the board of directors of the Combined Company. Thomas E. Capasse, Ready Capital's Chairman and Chief Executive Officer, will serve as Chairman of the board of directors and Chief Executive Officer of the Combined Company. In addition, Andrew Ahlborn, Ready Capital's Chief Financial Officer, will serve as Chief Financial Officer of the Combined Company, Gary T. Taylor, Ready Capital's Chief Operating Officer, will serve as Chief Operating Officer of the Combined Company, Thomas Buttacavoli, Ready Capital's Chief Investment Officer, will serve as Chief Investment Officer of the Combined Company, Jack J. Ross, Ready Capital's President and Director will serve as President and Director of the Combined Company, and Adam Zausmer will serve as Chief Credit Officer of the Combined Company.

37. The Registration Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

38. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the

Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

39. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

42. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

43. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

44. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power

to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

50. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 1, 2022                                      Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*